IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Kristina Koch,<br><br>                 Plaintiff<br><br>        v.<br><br>Liberty Mutual Group Inc.,<br><br>        Defendant. | CASE NO:<br><br>PLAINTIFF'S ORIGINAL<br>COMPLAINT AND<br>DEMAND FOR JURY TRIAL |

## PARTIES, JURISDICTION, VENUE, AND APPLICABLE LAW

1. Plaintiff Kristina Koch ("Koch") is an individual living in City of Lincoln, Lancaster County, Nebraska.

2. Defendant Liberty Mutual Group Inc. ("Liberty") is an insurance company domiciled at 175 Berkeley Street Boston, MA 02116.

3. Carolyn Anderson ("Anderson") is a non-party who caused the Accident which formed the basis of Koch's claim against Liberty.

4. At all times relevant to this matter, Liberty engaged in the business of providing insurance products, including underinsured motorist coverage, within the State of Nebraska.

5. Diversity Jurisdiction is vested in this Court and meets the requirements of 28 U.S.C. 1332 because this case involves citizens of different states and an amount in controversy in excess of $75,000.00, inclusive of interest and costs.

6. Venue is proper in the United States District Court for the District of Nebraska pursuant to 28 U.S.C. 1391(b)(1) & (2) because the defendant is subject to the Court's personal and subject matter jurisdiction with respect to this civil action and a substantial part of the events giving rise to this civil action occurred within the District of Nebraska.

## STATEMENT OF FACTS

7. Liberty is a diversified global insurer. It is the sixth largest property and casualty insurance company in the United States with assets of $156,043,000,000.00 and net income in excess of $3,000,000,000.00 annually.

8. Koch is a mammographer who makes $33.45 per hour.

9. There exists a drastic disparity in bargaining power between the parties.

10. The citizens of Nebraska have an interest in the fair and reasonable adjustment of claims made under property and casualty insurance policies.

11. Neb. Rev. Stat. 44-101 states: "Within the intent of this chapter, the business of apportioning and distributing losses arising from specified causes among all those who apply and are accepted to receive the benefits of such service, is public in character, and requires that all those having to do with it shall at all times be actuated by good faith in everything pertaining thereto, shall abstain from deceptive or misleading practices, and shall keep, observe and practice the principles of law and equity in all matters pertaining to such business. Upon the insurer, the insured, and their representatives, shall rest the burden of maintaining proper practices in said business."

12. Liberty sold Koch an auto insurance policy numbered A02-243-168577-40 6 1 (the "Policy") by which Liberty and Koch entered into a contract for insurance coverage for two named vehicles: 1999 Toyota Camry Solara and 1998 Jeep Grand Cherokee; and two named drivers Daniel Koch and Kristina Koch.

13. At all times relevant to this matter, the named vehicles and drivers were based in Lincoln, Nebraska.

14. The Policy period was April 1, 2016 to April 1, 2017.

15. The Policy provided insurance coverage to automotive casualty perils faced by Koch during the Policy period.

16. Koch is a first party insured beneficiary under the Policy.

17. Koch is a covered person under the Policy.

18. Under the Policy, Liberty insured Koch and her vehicles and provided various insurance coverages to Koch in the event of a loss resulting from any peril not otherwise excluded within the Policy.

19. Among the insurance coverages, Liberty agreed to pay for losses occurring to Koch as the result of an uninsured/underinsured motorist with a declared limit of $100,000.

20. The policy promised that Liberty "will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an. . ."underinsured motor vehicle" because of "bodily injury."

21. Koch was involved in a motor vehicle Accident on January 3, 2017 ("the Accident") with Anderson.

22. Anderson was solely responsible for the Accident.

23. The Accident caused significant injuries to Koch and caused a total loss of Koch's Toyota Camry Solara.

24. The Accident caused Koch to be transported to a hospital for emergency medical care and obtain subsequent follow-up medical care.

25. The Accident caused Koch to sustain a "buckle fracture" of her sternum. When the buckle fracture healed, the scar tissue that formed became intertwined with her nerves causing a permanent, painful condition.

26. The Accident caused Koch to sustain permanent physical injury.

27. The Accident forced Koch to replace her Toyota Camry Solara.

28. Koch sustained direct physical injuries and suffered a loss of income from being unable to work due to said injuries due to the Accident (collectively these losses covered by the Policy are referred to as "the Losses").

29. The Policy issued to Koch by Liberty was in full force and effect at the time of the Accident and the Losses.

30. On January 3, 2017, Koch had been paying premiums to Liberty for more than ten years.

31. The Accident was a peril anticipated by the Policy issued to Koch.

32. The Policy provided insurance coverage for the Losses the Accident caused.

33. Koch properly and timely reported the Losses to Liberty under the Policy.

34. Liberty was and is obligated to pay Koch for the Losses under the Policy.

35. On November 12, 2018, Koch demanded her policy limits from Liberty.

36. Koch's November 12, 2018, demand included documentation of $37,343.41 in past medical expenses incurred, $16,430.64 in lost wages, and $253,218.18 in future medical expenses.

37. In response, Liberty declined to pay policy limits to Koch.

38. Koch was forced to institute litigation against Liberty to secure the benefits of her own contract.

39. On April 4, 2020, Koch filed an Amended Complaint against Liberty.

40. In her Amended Complaint, Koch alleged she sustained damages in excess of $200,000.00.

41. In its Answer, Liberty admitted that Koch did not "contribute to the crash in any form."

42. In its Answer, Liberty admitted that Koch "was covered by a policy of insurance issued by Defendant Liberty Mutual Insurance Company ("Liberty Mutual") wherein Defendant Liberty Mutual promised and agreed to insure Plaintiff while she was the driver in the Toyota Sedan automobile in consideration for payment of premiums for such insurance by Plaintiff, who is the policyholder."

43. In its Answer, Liberty admitted that "The premiums on the contract of insurance were paid currently and the policy was in full force and effect on January 3, 2017."

44. In its Answer, Liberty admitted that "The insurance policy issued by Defendant Liberty Mutual, which covered the Plaintiff's vehicle, provides coverage to Plaintiff for loss or injury Plaintiff sustains as the result of the negligence of the operator of an 'underinsured motor vehicle.' An 'underinsured motor vehicle' is

defined by NEB. REV. STAT § 44-6406 as '…a motor vehicle with respect to the ownership, operation, maintenance, or use of which there is bodily injury liability insurance or a bond applicable at the time of the accident and the amount of the insurance or bond is less than or has been reduced by payments to persons, other than an insured, injured in the accident to less than the damages for bodily injury, sickness, disease, or death sustained by the insured.'"

45. In its Answer, Liberty admitted that Koch had complied with the terms of the contract between the parties.

46. In its Answer, Liberty admitted that it refused to pay Koch the limits of her insurance policy.

47. In its Answer, Liberty denied that it had refused to keep its promise to Koch and denied that it had breached its contract with Koch.

48. In its Answer, Liberty denied that Anderson was underinsured.

49. In its Answer, Liberty denied that it had broken its promise to Koch with no justification whatsoever.

50. In its Answer, Liberty affirmatively alleged that Koch "has not been inured or damaged to the extent alleged in Plaintiff's Amended Complaint."

51. In its Answer, Liberty affirmatively alleged that Koch "has not been injured or damages to the extent which exceeds the insurance policy" of the driver that caused the Accident.

52. In its Answer, Liberty demanded a trial by jury.

53. During the discovery phase of this litigation, Liberty obtained Anderson's insurance information, including policy limits.

54. Anderson had policy limits of $100,000.00. Together with the underinsured policy, there was $200,000.00 of coverage for this Accident available to Koch.

55. During the discovery phase, Liberty hired Dr. Liane Donovan. Liberty hired Dr. Donovan to do a records review. Liberty did not request that Dr. Donovan actually examine or speak to Koch, despite the fact that Koch lives less than twenty miles from Dr. Donovan's office and could have easily appeared for an examination.

56. Liberty relied on Dr. Donovan's testimony to deny Koch benefits under her policy.

57. On February 19, 2021, Anderson, through her personal representative Lisa Crist, tendered her $100,000.00 limits.

58. On March 31, 2021, Liberty consented to Koch receiving the $100,000.00 from Anderson.

59. On April 27, 2021, Liberty offered $30,000.00 to Koch to settle her claims under the Policy.

60. This matter was tried to a jury in Lancaster County, Nebraska on May 11, 2021, through May 14, 2021.

61. Koch incurred $21,482.94 in expenses to prosecute the trial.

62. Koch was forced to experience and endure a trial.

63. Koch had medical bills turned in to collections for non-payment.

64. Koch experienced financial distress as a result of Liberty's failure to fairly settle her claim.

65. On May 14, 2021, the jury returned a verdict for Koch in the amount of $2,600,000.00.

## CLAIM 1 – BAD FAITH

66. Koch hereby incorporates the allegations foregoing paragraphs as if fully restated herein.

67. Koch was a Liberty policyholder on January 3, 2017.

68. Koch was a beneficiary of the Policy on January 3, 2017.

69. Liberty owes Koch duties of good faith, and fair dealing under the Policy.

70. Koch made a claim for benefits under the Policy.

71. Liberty refused to pay those benefits even though Koch's entitlement to those benefits was reasonably certain.

72. Liberty breached its duty of good faith and fair dealing by:

    a. Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies; (Neb. Rev. Stat. 44-1540(3))

    b. Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear; (Neb. Rev. Stat. 44-1540(4))

c.  Not attempting in good faith to effectuate prompt, fair, and equitable settlement of property and casualty claims in which coverage and the amount of the loss are reasonably clear; (Neb. Rev. Stat. 44-1540(5))

d.  Compelling Koch to institute litigation to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in litigation brought by Koch; (Neb. Rev. Stat. 44-1540(6))

e.  Refusing to pay Koch's claim without conducting a reasonable investigation; (Neb. Rev. Stat. 44-1540(7))

f.  By instituting claims handling practices that violate its duty to its insureds, including Koch;

g.  By failing to adequately document the facts of the case;

h.

73. Liberty did not have a reasonable basis for denying Koch's policy limits demand.

74. Liberty knew or recklessly disregarded its lack of reasonable basis for denying Koch's policy limits demand.

75. Liberty breached the duties it owes Koch by failing to properly interpret the Policy and by failing to investigate the Losses in bad faith under the Policy without a reasonable basis for doing so.

76. Liberty breached the duties it owes Koch by failing, in bad faith, to pay the insurance proceeds due under the Policy without a reasonable basis for doing so.

77. Liberty breached the duties it owes Koch by denying, in bad faith, insurance coverage to Koch under the Policy without a reasonable basis for doing so.

78. Liberty breached the duties it owes Koch by refusing to settle, in bad faith, with Koch under the Policy without a reasonable basis for doing so.

79. As a proximate result of Liberty's breaches, Koch has suffered actual and reasonably foreseeable consequential damages in an amount to be determined at trial.

## **REQUESTS FOR RELIEF**

80. Koch hereby incorporates the allegations foregoing paragraphs as if fully restated herein.

81. Koch requests the Court find Liberty breached its contract with Koch in bad faith.

82. Koch requests the Court to enter judgement in favor of Koch and against Liberty for general damages; plus pre-judgment and post-judgment interest under Neb. Rev. Stat. §§45-103.02 and 45-104; plus attorney fees under Neb. Rev. Stat. §44-359; plus costs; plus all other damages and amounts as allowed by applicable law that may be determined at trial.

## **JURY DEMAND**

83. Plaintiff demands a trial by jury of all claims.

Kristina Koch, Plaintiff.

By:   /s/ Justin High
Justin High #23354
High & Younes
6919 Dodge Street
Omaha, Nebraska 68132
Ph:   402-933-3345
Fax:   402-933-3020
Email: justin@hyattorneys.com
*Attorneys for Plaintiff*